```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND

HERMAN N. MARTIN                *
                                *
                                *
v.                              *  Civil Action No. WMN-15-3987
                                *
CHARLES F. BOLDEN,              *
ADMINISTRATOR OF THE NATIONAL   *
AERONAUTICS AND SPACE           *
ADMINISTRATION                  *
                                *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## MEMORANDUM

Plaintiff Herman Martin is employed as a Contract Specialist in the Procurement Operations Division of the NASA Goddard Space Flight Center. Proceeding pro se, Plaintiff filed this action on December 30, 2015, complaining that his supervisor, Maria McNamee, gave him an unfair performance rating of "needs improvement" for the May 2012 to April 2013 appraisal period and that she was motivated by race, color, gender, and age discrimination. Plaintiff is an African American male and was 57 years old when he received this performance review. He brings his claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq.

Defendant has filed a motion to dismiss the Complaint, or in the alternative, for summary judgment, under Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure, on a

number of grounds. ECF No. 8. First, Defendant argues that, because Plaintiff raised only a racial discrimination claim in the administrative review process, he has failed to exhaust his administrative remedies as to any claims of color, gender, or age discrimination and, thus, this Court is without jurisdiction to hear those claims. Second, Defendant asserts that the allegations in the Complaint cannot establish a prima facie case of racial discrimination because the only action taken against him – the "needs improvement" performance evaluation – does not rise to the level of an "adverse employment action." Defendant also suggests that Plaintiff's prima facie case fails because he cannot show that he was performing his job satisfactorily or that members outside Plaintiff's protected class were treated any differently. Finally, Defendant argues that it has proffered a legitimate, non-pretextual reason for the action taken.

In opposing the motion, Plaintiff limited his response, almost exclusively, to presenting the reasons why he believes that McNamee's performance evaluation of Plaintiff was unfair. Plaintiff offered no response regarding his failure to exhaust his administrative remedies as to his color, gender, and age claims. He also offered no direct argument as to how an unfair

performance review qualifies as an adverse employment action.[1] For the reasons that follow, the Court will grant Defendant's motion to dismiss.

Defendant's exhaustion argument challenges this Court's jurisdiction to hear Plaintiff's color, gender, and age claims. In considering a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court may consider evidence outside the pleadings in deciding whether it has jurisdiction. Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F. Supp. 2d 602, 611 (D. Md. 2011). Here, the outside evidence that the Court must consider is Plaintiff's submissions in the administrative proceedings. Reviewing that evidence, the Court finds that Plaintiff has not exhausted his administrative remedies as to his color, gender, or age discrimination claims.

Before filing a lawsuit under Title VII or under the ADEA, a plaintiff must timely pursue and exhaust all available administrative remedies. See 42 U.S.C. § 2000e-16(c) (Title VII's exhaustion requirement; 29 U.S.C. § 626(d) (ADEA's exhaustion requirement). The performance evaluation to which Plaintiff takes issue was dated July 9, 2013, and Plaintiff filed a timely administrative complaint of discrimination with

---

[1] The Court notes that Plaintiff attempted to file a "Reply to Defendant's Reply," ECF No. 12-1, that was returned to him with the instruction that "[p]ermission of the Court is required to file a surreply." ECF No. 12. Plaintiff never sought that permission.

NASA's Office of Diversity and Equal Opportunity on August 27, 2013. In that administrative complaint, however, Plaintiff stated that the "needs improvement" review "was given because of my race to deny career and promotional opportunities." ECF No. 8-4 at 1 (emphasis added). In the portion of the complaint that asked for the "Reason Why You Believe You Were Discriminated Against," Plaintiff wrote "African American" in the space "Because of Race" but left blank the spaces following "Because of Age," "Because of Color," and "Because of Sex." Id.

The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). Therefore, if a plaintiff's charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on additional bases, such as color, gender, or age, claims based on those additional bases will be barred. See id.; Bryant, 288 F.3d at 132-33. The fact that an EEOC charge is filed pro se does not "automatically extend [the plaintiff] the right to a broad interpretation of

4

the charge." Byington v. NBRS Fin. Bank, 903 F. Supp. 2d 342, 349-350 (D. Md. 2012). Again, the Court notes that Plaintiff has made no argument that he has exhausted these additional claims.

Defendant's remaining arguments to dismiss the Complaint are made pursuant to Rule 12(b)(6).[2] Courts have interpreted the rule to require "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint does not need to present detailed allegations, but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. In other words, "in evaluating a Rule 12(b)(6) motion to dismiss, a

---

[2] Defendant prays, in the alternative, that it be granted summary judgment on Plaintiff's claims under Rule 56. Addressing Defendant's arguments that Plaintiff was not satisfactorily performing his job when he received the performance review and that Defendant had a legitimate non-pretextual reason for the review would require the Court to consider evidence outside of the complaint and to convert the motion to one for summary judgment. Because the Court finds that the Complaint fails to state a claim for other reasons, it need not consider that evidence or those arguments and will treat the motion as a motion to dismiss.

court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).  Furthermore, while "courts traditionally view civil rights complaints, particularly those brought pro se, with 'special judicial solicitude,'" that "does not transform the court into an advocate.  Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dept. of Soc. Services for City of Baltimore, 901 F.2d 387, 390-91 (4th Cir. 1990).

Because Plaintiff has not presented any direct evidence of discrimination,[3] he must prove his claim of racial discrimination under the now familiar burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under that framework, a plaintiff must first establish that: (1) he is

---

[3] Plaintiff references an October 1978 meeting that addressed a "caustic" racial environment, but does not explain what the "racial issue" at issue might have been.  ECF No. 1-1 at 2.  This incident, whatever it was, happened too long ago to be relevant.  Plaintiff also mentions in his Opposition a racial discrimination class action that was filed against Defendant.  ECF No. 10 at 3.  Again, there is no connection made between this class action and Plaintiff.  Defendant explains in its Reply that this is a reference to a 1993 class action brought by African-American scientists and engineers.  ECF No. 11 at 10.  In his Complaint, Plaintiff also makes generalized references to "white supremacy" and "racial bigotry [that] originated with the introduction of the African slave trade," ECF No. 1 at 6 and ECF No. 1-1 at 1, but identifies no statement of any employee of Defendant reflecting that bigotry.

6

a member of a protected class; (2) he was performing his job satisfactorily at the time he suffered an adverse employment action; (3) he was subjected to adverse employment action; and (4) similarly situated employees outside of his protected class received more favorable treatment. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). If a plaintiff meets that initial burden, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment action. If the employer proffers such an explanation, the burden returns to the plaintiff to show that the proffered reason is pretextual. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993).

Here, Defendant's primary challenge to Plaintiff's ability to establish a prima facie case of racial discrimination is that Plaintiff failed to allege that he suffered what courts would recognize as an adverse employment action under Title VII. "An adverse employment action is a discriminatory act which 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). Inquiry into the adverse nature of an employer's action typically focuses on whether the employee has suffered discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion. Boone v. Goldin, 178 F.3d

253, 255 (4th Cir. 1999).  Although something less than an "ultimate employment decision" may constitute an adverse employment action, Title VII does not remedy everything that makes an employee unhappy.  See Settle v. Baltimore County, 34 F. Supp. 2d 969, 989 (D. Md. 1999).

In his Complaint, the only action that Plaintiff alleges was taken against him was McNamee's performance review for the May 2012 to April 2013 appraisal period.  "[A] poor performance rating does not in itself constitute an adverse employment action." Jeffers v. Thompson, 264 F. Supp. 2d 314, 330 (D. Md. 2003).  "'Rather, it is a mediate step, which, if relied upon for a true adverse employment action (e.g., discharge, demotion, etc.) becomes relevant evidence.'"  Id. (quoting Settle, 34 F. Supp. 2d at 1010); see also, Allen v. Rumsfeld, 273 F. Supp. 2d 695, 706 (D. Md. 2003) (observing that low performance evaluations, reprimands, and counseling and communication card entries were not adverse employment actions).  While Plaintiff avers that the purpose of the evaluation was "to destroy [his] promotional and employment opportunities[, t]he result being a significant loss of future income," Compl. at 6, he does not allege that he has actually been deprived of any such potential opportunity.  In his Opposition he elaborates slightly on this allegation, positing that "[p]erformance appraisals are used by potential employees and consultants when making hiring

8

decisions, salary offers, and post Government employments [sic] consulting assignments. Therefore, this evaluation has caused significant financial harm to [Plaintiff]." ECF No. 10 at 5.

The Court notes that Plaintiff filed this action almost two and one half years after the challenged performance review and yet he identifies no subsequent adverse employment action that was influenced by that review. The allegation of the loss of some generalized potential occupational opportunities, like that suggested in Plaintiff's Opposition, is a "quintessential conclusory allegation" and fails to satisfy the requirements of Twombly-Iqbal. Hinton v. Virginia Union Univ., Civ. No. 15-569, 2016 WL 2621967, at *11 n.12 and n.13. (E.D. Va. May 5, 2016).

The Complaint also fails to provide any support for the fourth element of the prima facie case, i.e., that similarly situated employees outside of Plaintiff's protected class received more favorable treatment. The Complaint says absolutely nothing about how any other employees were treated. In his Opposition, Plaintiff does suggest that other employees, "who also submitted late entries or had missing data," did not receive "needs to improve" on their performance reviews, ECF No. 10 at 7, but does not allege that these employees were outside of his protected class.

The gist of Plaintiff's Complaint and argument is that he received a performance review that he believes was unfair and,

9

because he is African-American, the review must have been discriminatory.  After alleging that McNamee left out positive aspects of his performance "in order to fabricate a 'needs to improve' evaluation," he boldly posits "[c]learly, this was racial pretext, since [Plaintiff] is an African American male." ECF No. 1 at 6.  He jumps to a similar conclusion in his Opposition, stating that the Rules of Civil Procedure require that this case be adjudicated by a jury "using prima facie evidence based on Mr. Martin's member [sic] of a protected group."  ECF No. 10 at 5.  Alleging membership in a protected class alone, however, does not establish a prima facie case of discrimination.

    For all of these reasons, Defendant's motion to dismiss will be granted.  A separate order will issue.

                                          _____/s/_____
                                          William M. Nickerson
                                          Senior United States District Judge

DATED: October 12, 2016